UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SENTRY INSURANCE COMPANY, formerly known as SENTRY INSURANCE a MUTUAL COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THE CHARTER OAK FIRE INSURANCE COMPANY and INTSEL STEEL EAST LLC <br><br> Defendants. | § § § § § § § § § § § § § § § |

CIVIL ACTION NO. 4:26-cv-391

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Sentry Select Insurance Company, formerly known as Sentry Insurance a Mutual Company ("Sentry"), files this Complaint for Declaratory Judgment against Defendants, The Charter Oak Fire Insurance Company ("Charter Oak") and Intsel Steel East LLC ("Intsel"), and in support of same, would plead the following:

## NATURE OF ACTION

1.  In an underlying action entitled *Luis S. Flores, et al., v. Intsel Steel East LLC, et al.*, index no. 711688/2022m pending in the Supreme Court of New York, County of Queens ("Underlying Action" or "Underlying Complaint"), Flores and other plaintiffs (collectively "Flores" brought claims against Intsel alleging that Intsel's negligence caused the death of Wilson Lopez ("Wilson") and injury to Jorge Lopez ("Jorge").

2.  This action is an insurance dispute concerning whether Sentry owes coverage for the Underlying Action and, alternatively, Defendant Charter Oak's wrongful refusal to defend and indemnify their mutual insured, Intsel, in the Underlying Action.

## THE PARTIES

3. Sentry is a stock company organized under the laws of Wisconsin and has its principal place of business in Stevens Point, Wisconsin.

4. On information and belief, Charter Oak is a company organized under the laws of Connecticut and having its principal place of business in Hartford, Connecticut. Charter Oak may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Seventh Street, Suite 620, Austin, Texas 78701-3218.

5. On information and belief, Intsel is a citizen of the States of Delaware and Connecticut, being a limited liability company formed under the laws of the State of Delaware and having its principal place of business in Bridgeport, Connecticut.

6. On information and belief, Intsel is not a citizen of the State of Wisconsin, as none of Intsel's members are citizens of the State of Wisconsin, so that complete diversity of citizenship exists between Sentry and Intsel.

7. Intsel may be served with process by serving its registered agent, Capitol Services, Inc., 108 Lakeland Avenue, Dover Delaware 19901.

## JURISDICTION AND VENUE

8. This Court has subject jurisdiction pursuant to 28 U.S.C. § 1332(a) because Charter and Intsel are not citizens of the same state as Sentry and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. This Court has personal jurisdiction over the Defendants because they do business and are authorized to do business in the State of Texas and/or because they entered into an insurance contract in the State of Texas.

10.　Venue is proper in this Court because a substantial part of the events or omissions giving rise to Sentry's claim occurred in this district, and the Defendants are subject to the Court's personal jurisdiction.

## SENTRY INSURANCE POLICY

11.　Sentry issued a business auto insurance policy to Triple-S Steel Holdings Inc. ("Triple-S") with a policy period of 6/01/20 - 6/01/21 (the "Sentry Auto Policy"). A true and correct copy of the Sentry Auto Policy is attached hereto as Exhibit 1.

12.　Tripe-S has its principal place of business in Houston, Texas. On information and belief, the Sentry Auto Policy was issued to Triple-S in Texas.

13.　On information and belief, Intsel is a subsidiary to, and/or affiliated with, Triple-S. Intsel is also a named insured on the Sentry Auto Policy.

14.　The Sentry Auto Policy states, in pertinent part, as follows:

**Section II - Covered Autos Liability Coverage**

**A.　Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos

        Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

. . .

**B.**     **Exclusions**

    This insurance does not apply to any of the following:

    **8.**     **Movement Of Property By Mechanical Device**

        "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

. . .

**Section IV - Business Auto Conditions**

The following conditions apply in addition to the Common Policy Conditions:

**B.**     **General Conditions**

. . .

    **5.**     **Other Insurance**

        **a.**     For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

        **(1)**     Excess while it is connected to a motor vehicle you do not own; or

        **(2)**     Primary while it is connected to a covered

>  "auto" you own.
>
>  . . .
>
>  **Section V - Definitions**
>
>  **A.**  "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".
>
>  **B.**  "Auto" means:
>
>  **1.**  A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or
>
>  **2.**  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.
>
>  However, "auto" does not include "mobile equipment".
>
>  **C.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.
>
>  . . .
>
>  **G.**  "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.
>
>  . . .
>
>  **P.**  "Trailer" includes a semitrailer.

15. The Sentry Auto Policy schedules symbol 01 for "Covered 'Autos'" with regard to Liability Coverage which is defined as "Any 'Auto.'"

16. The Sentry Auto Policy has a deductible of $100,000 applicable to Liability Coverage

for which Intsel is responsible for paying.

## CHARTER OAK INSURANCE POLICY

17. Charter Oak issued a commercial general liability policy to Triple-S with a policy period of 6/01/20 - 6/01/21 (the "Charter Oak CGL Policy"). A true and correct copy of the Charter Oak CGL Policy is attached hereto as Exhibit 2.

18. On information and belief, the Charter Oak CGL Policy was issued to Triple-S in Texas.

19. Intsel is also a named insured on the Charter Oak CGL Policy.

20. The Charter Oak CGL Policy states, in pertinent part, as follows.

**SECTION 1 - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

. . .

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in

        the "coverage territory";

    **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

    . . .

**2.**    **Exclusions**

This insurance does not apply to:

. . .

    **g.**    **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any "insured".

. . .

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . .

**4.**    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

(I)   Another insurance company;

. . .

**a.   Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below, except when Paragraph **d.** below applies.

**b.   Excess Insurance**

**(1)**   This insurance is excess over:

**(a)**   Any other insurance, whether primary, excess, contingent or on any other basis:

. . .

**(iii)**   If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to any exclusion in this Coverage Part that applies to aircraft, "autos" or watercraft.

. . .

**SECTION V - DEFINITIONS**

**3.**   "Auto" means:

**a.**   A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached

        machinery or equipment; or

        . . .

**4.**     "Bodily injury" means:

    **a.**     Physical harm, including sickness or disease sustained by a person; or

    **b.**     Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

        . . .

**15.**     "Loading or unloading" means the handling of property:

    **a.**     After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

    **b.**     While it is in or on an aircraft, watercraft, or "auto";

    **c.**     While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto".

        . . .

**17.**     "Occurrence" means:

    **a.**     An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

        . . .

21.     Intsel complied with all terms and conditions precedent contained in the Charter Oak CGL Policy, to the extent not waived or otherwise excused because of the acts or conduct of Charter

Oak.

## THE UNDERLYING ACTION

22. On or about June 2, 2022, the Underlying Complaint was filed against Intsel and others. A true and correct copy of the Underlying Complaint is attached hereto as Exhibit 3.

23. The Underlying Complaint alleged that Intsel is in the business of selling steel beams and sold certain beams to a general contractor, Bay Restoration Corp. ("Bay Restoration"), to be used in connection with a construction project in the State of New York (the "site"). (Ex. 3, ¶ 55, 62).

24. The Underlying Complaint alleged that Intsel loaded the beams on to a trailer that it owned. (Id.. ¶ 64, 74).

25. The Underlying Complaint also alleged that, Ruan Transportation Corporation ("Ruan"), was the owner of the trailer. (Id., ¶ 65). Ruan was not named as a defendant in the Underlying Complaint.

26. The Underlying Complaint alleged that Ruan rented a truck tractor to tow the trailer and was the operation of the combined tractor-trailer. (Id., ¶ 68, 70, 72).

27. The Underlying Complaint alleged that, on June 3, 2020, an employee of Ruan drove the tractor-trailer with the beams to the site. (Id., ¶ 84).

28. The Underlying Complaint alleged that Wilson and Jorge were working at the site as employees of Bay Restoration. (Id., ¶ 81-82, 126-128).

29. The Underlying Complaint alleged that Wilson was operating a forklift to offload the beams from the tractor-trailer. (Id., ¶ 87).

30. The Underlying Complaint alleged that the beams were in the process of being offloaded from the tractor-trailer when the forklift, while being operated by Wilson, toppled over and

crushed him, causing his death. (Id., ¶ 88-90, 116).

31.     The Underlying Complaint alleged various claims against Intsel including negligence and violations of New York Labor laws.

32.     The Underlying Complaint alleged Intsel was negligent in various respects, including "in failing to provide the proper equipment, devices, instrumentalities, means and methods for the Beams to be property and safely offloaded from the Trailer at the Premises," "in causing. . .the Beams to be offloaded from the Trailer under unsafe and dangerous conditions and without proper safety measures in place," "in failing to provide and/or ensure the use of reasonably safe, suitable and adequate safety equipment, safeguards…for use in conjunction with the offloading of the Beams from the Trailer." (Id., ¶ 95).

33.     On or about April 22, 2021, Flores filed a lawsuit entitled *Luis S. Flores, et al., v. 98-11 211 Street LLC, et al.*, index no. 709309/2021, in the Supreme Court of New York, County of Queens (the "Ruan Action" or "Ruan Complaint"), relating to the same incident alleged in the Underlying Complaint. A true and correct copy of the Ruan Complaint is attached hereto as Exhibit 4.

34.     Intsel was not named as a defendant in the Ruan Complaint.

35.     The Ruan Complaint alleged that Ruan was hired to transport the steel beams to the site. (Id., ¶ 62).

36.     The Ruan Complaint alleged that Ruan was the owner of the truck tractor and trailer used to transport the steel beams. (Exhibit 4, ¶ 44, 48).

37.     The Ruan Complaint alleged that an employee of Ruan drove the tractor-trailer with the beams to the site. (Id., ¶ 66).

**COMPLAINT FOR DECLARATORY JUDGMENT - Page 11**

38. The Ruan Complaint alleged various negligence claims against Ruan, including "in the ownership, operation, maintenance and/or control fo the Tractor-Trailer Truck." (Id., ¶ 76).

39. On or about January 25, 2023, pursuant to court order, the Underlying Action was "fully consolidated" with the Ruan Action "for all purposes." A true and correct copy of that court order is attached hereto as Exhibit 5.

40. On or about June 26, 2024, in the Underlying Action, Ruan produced its amended responses to Flores' notice to admit facts. A true and correct copy of the notice to admit facts and Ruan's amended answers thereto are attached hereto as Exhibits 6 and 7 respectively.

41. In its amended responses, Ruan admitted that it owned the subject trailer and rented the subject tractor truck from Ryder Truck Rental Inc. (See Exhibit 7, ¶ 2-3). Ruan further admitted it drove the tractor-trailer to the site. (Id., ¶ 22).

42. Sentry has been defending Intsel in the Underlying Action pursuant to a reservation of rights and has paid defense-related fees and costs in excess of $75,000.

## CHARTER OAK'S WRONGFUL CONDUCT

43. Charter Oak was timely notified of the Underlying Action.

44. On or about July 6, 2022, Charter Oak issued a letter to Intsel stating it was reserving its rights to deny coverage based on the Auto Exclusion (Exclusion g.) and that the Charter Oak CGL Policy was excess to other insurance afforded to Intsel. A true and correct copy of the letter is attached hereto as Exhibit 8.

45. In that July 6 letter, Charter Oak states: "[s]o, if Exclusion g. does not apply, this [CGL] policy will not be excess, but will share with another policy(ies) affording coverage to Intsel." (Ex. 8, p. 8).

46. Thereafter, Sentry requested that Charter Oak defend and indemnify Intsel in the Underlying Action. To date, Charter Oak has refused to do so or to contribute toward the defense of Intsel.

47. On or about August 23, 2024, Charter Oak issued a letter to Intsel stating it was withdrawing its prior reservation of rights from July 6, 2022 but continued to assert that the Charter Oak CGL Policy was excess to the Sentry Auto Policy. A true and correct copy of the letter is attached hereto as Exhibit 9.

48. Thereafter, Sentry requested that Charter Oak defend and indemnify Intsel in the Underlying Action.

49. To date, Charter Oak has not paid any fees or costs to Intsel's defense in the Underlying Action.

## COUNT 1 - DECLARATORY JUDGMENT

50. Sentry restates and incorporates by reference the foregoing paragraphs as though set forth fully herein.

51. The Sentry Auto Policy excludes coverage for "'[b]odily injury. . .resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto'" (the "Movement of Property by Mechanical Device" Exclusion).

52. The Underlying Action alleges that Wilson was using a forklift to unload the steel beam from the subject tractor-trailer when the forklift toppled over, crushed him and caused injury to him and Jorge.

53. The Movement of Property by Mechanical Device Exclusion precludes any coverage for the Underlying Action under the Sentry Auto Policy.

54. As a result, there is no coverage for the Underlying Action under the Sentry Auto Policy.

THEREFORE, Sentry requests the Court declare and enter the following judgment in its favor:

    a. That the Movement of Property by Mechanical Device Exclusion precludes any coverage for the Underlying Action under the Sentry Auto Policy;

    b. That Sentry owes no duty to defend Intsel in the Underlying Action;

    c. That Sentry owes no duty to indemnify Intsel in the Underlying Action;

    d. Any other relief this court deems just and proper.

## COUNT II - SUBROGATION AGAINST CHARTER OAK

55. Sentry restates and incorporates by reference the foregoing paragraphs as though set forth fully herein.

56. The Underlying Action alleges damages because of "bodily injury" caused by an "occurrence," as those terms are defined in the Charter Oak CGL Policy, during the policy period.

57. Charter Oak owes a duty to defend and indemnify Intsel in Underlying Action under the Charter Oak CGL Policy.

58. Charter Oak wrongfully refused to defend Intsel and pay any defense-related fees and expenses incurred by Sentry and/or Intsel.

59. Sentry is subrogated to the rights of Intsel pursuant to contract and/or law.

60. As a direct result of Charter Oak's wrongful refusal to defend Intsel, Sentry has paid defense-related fees and expenses incurred by Intsel for which Charter Oak is responsible.

61. As a direct result of Charter Oak's wrongful refusal to defend Intsel, Charter Oak is bound by any settlement or judgment to be incurred in the Underlying Action.

62. Sentry is entitled to reimbursement from Charter Oak for the total amount paid in defense and/or indemnity of Intsel in the Underlying Action or paid in excess of its pro rata share thereof.

THEREFORE, Sentry requests that the court declare and enter the following judgment in its favor:

a. That Charter Oak owes a duty to defend and indemnify Intsel in Underlying Action under the Charter Oak CGL Policy;

b. That Charter Oak wrongfully refused to defend Intsel and pay any defense-related fees and expenses incurred by Sentry and/or Intsel;

c. That Sentry is entitled to reimbursement from Charter Oak for the total amount paid in defense and/or indemnity of Intsel in the Underlying Action or paid in excess of its pro rata share thereof;

d. That Sentry is entitled to reimbursement and/or contribution from Charter Oak for an amount to be determined;

e. Charter Oak is bound by any settlement or judgment to be incurred in the Underlying Action;

f. Any other relief this court deems just and proper.

## COUNT III - IN THE ALTERNATIVE
## CONTRIBUTION FROM CHARTER OAK

63. In the alternative, Sentry restates and incorporates by reference the foregoing paragraphs as though set forth fully herein.

64. The Underlying Action alleges damages because of "bodily injury" caused by an "occurrence," as those terms are defined in the Charter Oak CGL Policy, during the policy period.

65. Charter Oak owes a duty to defend and indemnify Intsel in Underlying Action under the Charter Oak CGL Policy.

66. Charter Oak wrongfully refused to defend Intsel and pay any defense-related fees and

expenses incurred by Sentry and/or Intsel.

67. As a direct result of Charter Oak's wrongful refusal to defend Intsel, Sentry has paid more than this common shares of defense-related fees and expenses incurred by Intsel.

68. As a direct result of Charter Oak's wrongful refusal to defend Intsel, Charter Oak is bound by any settlement or judgment to be incurred in the Underlying Action.

69. Sentry is entitled to reimbursement and/or contribution from Charter Oak for the amount paid in defense and/or indemnity of Intsel in the Underlying Action.

THEREFORE, Sentry requests that the Court declare and enter the following judgment in its favor:

    a. That Charter Oak owes a duty to defend and indemnify Intsel in Underlying Action under the Charter Oak CGL Policy;

    b. That Charter Oak wrongfully refused to defend Intsel and pay any defense-related fees and expenses incurred by Sentry and/or Intsel;

    c. That Sentry is entitled to reimbursement and/or contribution from Charter Oak for the amount paid in defense and/or indemnity of Intsel in the Underlying Action;

    d. That Sentry is entitled to reimbursement and/or contribution from Charter Oak for an amount to be determined;

    e. Charter Oak is bound by any settlement or judgment to be incurred in the Underlying Action;

    f. Any other relief this court deems just and proper.

## ATTORNEYS' FEES

70. Sentry restates and incorporates by reference the foregoing paragraphs as though set forth fully herein.

71. Sentry is subrogated to the rights of Intsel pursuant to contract and/or law.

72. Charter Oak owes a duty to defend and indemnify Intsel in Underlying Action under

the Charter Oak CGL Policy.

73. Charter Oak breached its duty to defend and/or indemnify Intsel in Underlying Action under the Charter Oak CGL Policy.

74. Pursuant to Section 542.060 of the Texas Insurance Code, Sentry seeks 18% and all reasonable and necessary attorneys' fees to which it would be entitled pursuant to its subrogation rights.

THEREFORE, Sentry requests the Court declare and enter the following judgment in its favor:

    a. That Sentry is entitled to recover from Charter Oak all of its reasonable and necessary attorney's fees and 18% Insurance Code interest that Sentry would be entitled to by virtue of being subrogated to the rights of Intsel against Charter Oak; and

    b. Any other relief this court deems just and proper.

    Respectfully submitted,

    S/Russell J. Bowman
    Russell J. Bowman
    Texas State Bar No. 02751550
    800 West Airport Freeway, Suite 860
    Irving, Texas 75062
    (214) 922-0220
    (214) 922-0225 (FAX)
    ATTORNEY FOR PLAINTIFF